The opinion of the Court was delivered by
Withers, «J.
Upon a bill in equity for partition of premises on East Bay, a sale was ordered "by the Court of Equity. The plaintiff charged officially with the execution *107 of the order, offered the property at auction, and one Greer, being in attendance in company with this defendant, bid seven thousand dollars, being ten dollars over the next highest bid; the property was knocked down to him, and thereupon such entry made as (we presume) complied with the Statute of Frauds. The defendant said not a word at the time of the bidding, or before or afterwards, to the plaintiff : Greer followed the plaintiff on his way to his office, and said, “ Mark 'that down to Mr. Barrett, by order of Mr. Ottólengui.” The plaintiff said “ Very well;” and we are to assume, .though the book of entry was not produced, that the plaintiff, on the way to his office,’or at-his office, added to the name of the purchaser, “for Jacob Barrett.” We are to assume the fact to be true that the defendant caused Greer to bid, and represented himself as Barrett’s agent to buy at a price unlimited, and that, in truth, Barrett had limited the price to four thousand five hundred dollars; that the defendant told Greer to request the plaintiff not to make out the titles, inasmuch as Barrett, when he came to town, would pay the cash. Barrett refused to take the property, and it was subsequently resold at five thousand one hundred dollars, and this action is brought, in case, for damages resulting from the transaction thus very briefly stated.
A motion for nonsuit was granted, on circuit, and it was urged .on the grounds — First, that the parties to the bill for partition, i. e. those in whom the title to the premises was vested could alone maintain this action, not Gray, Master in Chancery. Second, that no damage had been done to any body; and that if there had been, it was, so far as this defendant was concerned, damnum absque injuria.
The second proposition is the strongest and the clearest, and it commanded the mind of the presiding Judge. We proceed to consider it.
When the biddings ceased and the name of the bidder at the highest sum was entered, there can be no doubt, in any *108 professional mind, that Greer was bound to Gray as the purchaser: bound upon, contract, enforci.ble, in any jurisdiction, where such a contract is cognizable, and at the instance of Gray, Master in Chancery.- It was after this, and when Gray was on his way to his office, that he first- heard of Barrett or of Ottolengui in connection with the sale. Greer, who was a responsible purchaser, tells him, that Ottolengui said, he must put the property down to Barrett. Gray does so. If he has lost the liability of Greer because he converted him into an agent of another, and that other is • not bound because the authority he gave was exceeded, at whose instance, in any legal contemplation, has all this been accomplished? It has been at the instance of Greer, whom, and whom alone, Gray trusted, and (as it seems) too confidingly, and thus Gray became, concurrently at least, the cause, by too little inquiry and too ready acquiescence,'of any loss that has followed. If Barrett had been insolvent, is there any doubt that Gray would have utterly refused, and legally too, to have changed the condition of affairs? He never acted upon ^.ny faith that he reposed in Ottolengui, and there was ’certainly no privity of contract between them. Neither Greer nor -Ottolengui was the 'general agent of Barrett, nor was it known, when the auction was finished, that either of them was a special agent, or one limited as to the special object of this sale. It is a case, then, wherein the complainant, against one with whom he never dealt, has either been the author of his own loss, or else has greatly contributed to it,'while that other has done no more, quoad such, complainant, .than to mislead by assuming unwarranted authority, the person with whom he did deal. If Greer had been made to suffer by Gray, he could have resorted to Ottolengui, if he .had given cause of action to any one, and the effort here is, in effect, to assign to Gray, through the instrumentality of an action in tort, Greer’s right to recover damages from Ottolengui. Wherever redress is sought for *109 an injury, arising out of the breach of a contract, whether the action he conceived in form ex contractu or ex delicto, some privity of contract must limit the range of a plaintiff in seeking those who are liable to him. As illustration: in case the axle of a railroad car shall break, or a chain cable of a vessel, and many shall be injured thereby, it was never conceived that any one suffering damage could bring his action in case against the party who supplied the axle or the cable: for if he could, where would the line of responsibility to him end? Shall he resort to him who supplied the defective iron, to reach whom he might have to travel through a multitude of persons who had, in turn, sold it. And if one, injured under the circumstances supposed, could seek a person or a cause so remote, one hundred who had been damaged could of course do the same. A. contracted with the Postmaster-General to run coaches over a certain line of road, and B. and others contracted with A. to supply the horses, and also hired 0. to drive them: a defective coach broke down and severely injured 0. His action on the case against A. was defeated, upon the principle stated. He had no privity of contract with A, who was too remote from him, and the Postmaster-General was, of course, not liable: Winterbottom vs. Wright, 10 Exch. Rep. (Mees. & Wels.) 109. The class of cases in which one perpetrates an injury upon another by the instrumentality of a mere servant, is distinguishable from this; and so is that class of which Langridge vs. Levy, 2 Mees. & Welsby, 519, is a remarkable example. Tt was case against Levy for falsely and fraudulently warranting a gun to have been made by Nock, that it was safe, &c., and selling the same as such to the plaintiff’s father, for the use of himself and his sons. The gun was not made by Nock — was unsound — burst in the hands of one of the sons, the plaintiff, and seriously injured him. His action against-Levy was maintained: but it proceeded upon the footing of . fraud in Levy, and fraud directly upon the plaintiff, .|ecause Levy knew that the gun was to be used by the sons, kndtthe *110 plaintiff relied upon such warranty and wilful misrepresentation, so that it was concluded by the Court, a direct fraud was committed upon him. This very case has somewhat troubled the courts of England, as may be seen from that just above cited from 10 Meeson & Welsby, and also Lumley vs. Gye, 75 Eng. Com. Law, 214.
Whether Gray, as Master, could maintain an action of tort, or whether that form of remedy is confined to those who owned the real estate sold by order of the Court of Equity, is a question which we shall not adjudge upon this occasion. So far as we have considered it, it is not free from doubt: while it is apparent that convenience would be subserved if the Master, in such circumstances, should be able to represent all parties in enforcing remedies arising out of his official transactions. Rules seemed to have been served upon sundry persons by order of the Court of Equity, as if the guilty might have been dealt with for contempt: but they seem to have been discharged, and Ottolengui is said to have successfully disputed the jurisdiction over him. It is not at present necessary to determine whether a Master in Chancery, in such circumstances as the present, shall be held to be invested with all the rights of a sheriff, after levy, as against wrong doers.
One question made and argued was, whether Gray was properly excluded as a witness on his own side.
He, as Master in Chancery, was directed to resell the property, and to “prosecute such action at law as he shall be advisedthe object being to recover such damages as might' arise out of a resale of the premises made necessary by the miscarriage as to the first one.
He is plaintiff on the record, and the general rule is, that neither party can be a witness on his own side. Some exceptions exist in our decisions, as in the case of the Ordinary, or where the nominal party, plaintiff on the record, is in no wise interested in the subject ipatter, not liable for the costs, and in whose name any one aggrieved is, by law, *111 authorized to sue upon an official bond. In such cases the obligee’s name is used, that of the party really litigant being endorsed upon the record, and he being liable for costs. Such is not the condition of this plaintiff, for he is liable in this jurisdiction for the costs that may be incident to his defeat. It is no answer to say that he is directed to come by the Court of Equity, and that he will be indemnified by the action of that Court for whatever costs he may have to pay. We cannot know that: it may depend upon equities that we cannot adjust: he may be viewed, in that jurisdiction, as having so far contributed to the occasion which originated this action as to oust him from any claim to indemnity for what it may cost. In fact, we can view him only as an ordinary plaintiff, for he claims the damages laid as his own, and, therefore, must be regarded here as interested in the subject-matter, so far as we can judicially know, and he certainly is concerned for the costs. If he has incurred a liability to respond to those who may have suffered by the miscarriage of the first sale, in consequence of having incautiously released Greer, who was bound, and could hold no other in lieu of him, (and we mean not to decide it,) then the doctrine of the case of the Gas Light Company vs. The City Council, 9 Rich. 342, would exclude him as a witness, even if he were not plaintiff. A vendue master, plaintiff, is excluded from testifying in his own case, Carter vs. Bennet, 3 Hill, 254. If we regard this plaintiff as suing for a fund which is to pass through his hands as a subject of partition, then he is interested to the extent of the commissions on that sum, and an executor was considered disqualified to testify for the same cause, in Executors of Bellamy vs. Cain, 3 Rich. 354,
It is the judgment of this Court, that the nonsuit was properly granted, and the motion here is dismissed.
O’Neall, Wardlaw, Whitner and Glover, JJ., concurred.

Motion dismissed.